# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Stanley Webb,** | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 18-2931 (CKK) |
| **United States Veterans Initiative** *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Plaintiff, appearing *pro se*, has sued two private, non-profit organizations -- United States Veterans Initiative ("U.S. VETS") and The Community Partnership -- for discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq*. He also sues under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 *et seq*., and the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901 *et seq*. Am. Compl. at 2, 5 [Dkt. # 9]. U.S. VETS has moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss Pl.'s Am.Compl. [Dkt. # 14]. Plaintiff has opposed the motion [Dkt. ## 21, 26], and U.S. VETS has replied [Dkt. # 19].

Upon consideration of the parties' submissions, and for the reasons explained below, the Court finds that plaintiff lacks constitutional standing to sue under the FHA. Therefore, it will dismiss the federal claim and, pursuant to 28 U.S.C. § 1367(c)(3), will decline to exercise supplemental jurisdiction over the non-federal claims.

## I. BACKGROUND

**A. Organizational Structure and Services Rendered**

U.S. VETS states that it "is the nation's largest non-profit provider of comprehensive services to homeless and at-risk veterans." Mem. at 3.[1] It contracts with The Community Partnership for the Prevention of Homelessness, which in turn "coordinates the District of Columbia's Continuum of Care" for citizens in need.[2] *Id.*, n.2. Housing and programmatic services are funded by "federal government grants" from the U.S. Department of Housing and Urban Development ("HUD") for permanent housing; the Veterans Administration for transitional housing; and the Department of Labor for work force programs. Mem. at 3, n.3. This action arose from plaintiff's participation in the Permanent Supportive Housing Program ("SHP") administered by U.S. VETS. *Id.* at 3-4; *see also* Am. Compl. at 3. "Through leasing funds, . . . U.S. VETS makes housing affordable for program participants." Mem. at 5. It "does not manage or own properties or apartment buildings" in the District but rather "enters into lease agreements directly with the landlord or management company to rent apartments for occupancy use by its veterans." *Id.* During the relevant time period, U.S. Vets had housing "arrangements" for SHP participants at two locations in the District. *Id.* at 5-6.

---

[1] The Court will cite the actual page numbers of Defendant's Memorandum of Points and Authorities in Support of its Motion to Dismiss [Dkt. # 14 at ECF pp. 4-35]. For all other documents, the Court will cite the page numbers assigned by the electronic case filing system.

[2] The record does not show that a summons has been issued for The Community Partnership. In *in forma pauperis* proceedings such as this, however, the Court is required to dismiss a complaint "at any time" it determines that the complaint, among other enumerated grounds, fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915. Plaintiff has not alleged that The Community Partnership committed any wrongdoing; instead, he "alleges" that it "is the contractor and coordinates, manages and has oversight" of U.S. Vets. Am. Compl. at 3 ¶ 12. That descriptive statement does not amount to a claim. Accordingly, the complaint against defendant Community Partnership is hereby dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

According to U.S. VETS, plaintiff is a veteran who has been enrolled in the SHP for more than eight years. He resided "in a shared 2-bedroom unit" located on Atlantic Street in the District's southeast quadrant from 2010 until January 2016. Mem. at 6; *see also* Def.'s Ex. B, Feb. 12, 2018 Letter of Determination, No Probable Cause Finding ("Feb. 12th Dec.") [Dkt. # 14-2]. When plaintiff's roommate moved out in late 2015, plaintiff lived alone "for a short time" until in January 2016 U.S. VETS terminated the "property lease with the landlord because of ongoing maintenance problems and housing code violations." Mem. at 7. U.S. VETS had "to move a dozen veterans," including plaintiff who "[u]ltimately . . . was relocated to 2613 Douglas Place, S.E. . . . in the Manor Village Apartment complex . . . where he lived in a 2-bedroom apartment with a roommate." *Id*. (citing Am. Compl. at 3; Orig. Compl. ¶¶ 8-10, 12).

On May 25, 2017, plaintiff filed a gender discrimination charge with HUD, claiming that U.S. VETS had discriminated when it failed to offer him "his own apartment unit, while a female client did not have to share an apartment unit." Feb. 12th Dec. at 1, 6. On June 14, 2017, HUD referred the matter to the D.C. Office of Human Rights ("OHR"), having "determined that the fair housing law" enforced by OHR "is substantially equivalent to the [FHA]" and that OHR "has the authority to address housing discrimination complaints within the area where [plaintiff's] complaint arose." Def.'s Ex. A, June 14, 2017 Acceptance Letter (citing 42 U.S.C. § 3610(f)) [Dkt. # 14-1 at 10-11]. Following an investigation and an exhaustive analysis, OHR issued the foregoing no probable cause determination. Notably, it found that the female to whom plaintiff compared himself "was in a different program," which unlike the SHP, "allow[ed] for single occupancy." Feb. 12th Dec. at 3. On June 22, 2018, OHR denied plaintiff's request for reconsideration and advised him of his right to file a Petition for Review in D.C. Superior Court, within three years from the date of service of the decision. Def.'s Ex. C [Dkt. # 14-3]. Plaintiff filed suit in this Court on December 13, 2018.

### B. Plaintiff's Allegations and Claims

In the Amended Complaint, plaintiff alleges the following. On October 8, 2010, U.S. VETS "execute[d] a rental agreement for exclusive rights for apartment #301 at 425 Atlantic Street, SE." Am. Compl. at 3 ¶ 1. Pursuant to the terms of the lease "under DHS," plaintiff's rent was "zero." *Id*. In June 2012 while plaintiff was away, U.S. VETS "removed [his] personal property" from the apartment without his consent and placed it in "apartment # 302 without a valid lease agreement." *Id*. ¶¶ 2-3. Plaintiff "occupied apartment # 302 for four and a half years without a valid rental agreement." *Id*. ¶ 5. On "January 20th, 2017, U.S. VETS entered Apartment 302 "and removed [plaintiff's] belongings when he was not home and without his consent." *Id*. ¶ 7. It "took" the belongings "to 2613 Douglass Pl SE #203 without [plaintiff's] consent and without him being present."[3] *Id*. ¶ 8. On January 30, 2017, U.S. VETS "appeared at the apartment . . . and presented [plaintiff] with a blank lease" that he "refused to sign[.]" *Id*. ¶ 9. Plaintiff was given "an ultimatum" to sign and date the lease or "take his belongings and go live in the streets." *Id*. Allegedly, U.S. VETS "altered" the lease to make it appear as though plaintiff "had agreed to the terms and conditions of their rental agreement and the program called SHP." *Id*. ¶ 11.

Plaintiff has not clearly delineated his claims. He demands an unspecified award of monetary damages for "breach of contract" and at least "$50,000 for each violation" of the FHA. Am. Compl. at 5.

---

[3] Based on plaintiff's account, he was relocated to the Douglas property in January 2017 which was the year after U.S. Vets had supposedly terminated the Atlantic Street lease. This seems at first blush to be typographical error. According to U.S. VETS, however, several "clients," including plaintiff, had in fact "refused to move" to "substitute housing," which caused it "additional expenses in terminating the lease," Mem. at 7, and "plaintiff was the last occupant to move," *id*. at 8.

## II. LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(1)

A party may move under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction. To survive such a motion, plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claims. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (3d ed. 2017) (noting the "wide array of cases from the four corners of the federal judicial system involving the district court's broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction to resolve factual issues"). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks omitted).

"At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

### B. Motions to Dismiss Under Rule 12(b)(6)

A party may move under Rule 12(b)(6) to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In considering such a motion, the Court accepts as true the well-pleaded allegations in the operative complaint, but it does "not accept as true . . . the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

### C. *Pro Se* Pleadings

*Pro se* pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), but still they must satisfy the minimal requirement of alleging sufficient "factual matter" to permit a court "to infer more than the mere possibility of misconduct[.]" *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015) (quoting *Atherton v. District of Columbia Off. of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (internal quotation marks omitted). In addition, when considering a motion to dismiss, the court should read the *pro se* filings collectively. Therefore, the Court will consider not only the facts alleged in the amended complaint, but also any facts alleged in plaintiff's opposition and supplemental opposition. *See Brown*, 789 F.3d at 152 ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings

responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).

### III. ANALYSIS

Under Article III of the U.S. Constitution, this Court's judicial power is limited to adjudicating actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984). "In an attempt to give meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,' among which are standing[,] ripeness, mootness, and the political question doctrine." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen*, 468 U.S. at 750). These doctrines incorporate both prudential elements, which " 'Congress is free to override,' " *id*. (quoting *Fair Employment Council of Greater Wash., Inc. v. BMC Mktg. Corp*., 28 F.3d 1268, 1278 (D.C. Cir. 1994)), and "'core component[s]'" that are "'essential and unchanging part[s] of the case-or-controversy requirement of Article III,'" *id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," which "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A "showing of standing 'is an essential and unchanging' predicate to any exercise of [federal court] jurisdiction," *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560)), such that "[t]he defect of standing is a defect in subject matter jurisdiction," *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).

Although the parties have not briefed "the question of [p]laintiff's standing . . ., '[i]t is well established that a federal court cannot act in the absence of jurisdiction, . . . and that jurisdictional issues' including Article III standing 'may be raised by the court *sua sponte*.'" *Jefferson v. Harris*, 170 F. Supp. 3d 194, 220 (D.D.C. 2016) (quoting *Am. Library Ass'n v. FCC*,

401 F.3d 489, 492 (D.C. Cir. 2005) (alteration in original)). The "irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. First, "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id*. Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id*. Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (internal quotation marks and citations omitted). As discussed next, the Court finds that plaintiff cannot satisfy the first requirement of standing.

In order to have "a defined and personal stake in the outcome of the litigation," plaintiff must show that he is "a proper plaintiff." *Fla. Audubon Soc.*, 94 F.3d at 663 (internal quotation mark and citation omitted). Under the FHA, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . . to obtain appropriate relief with respect to such discriminatory housing practice or breach." 42 U.S.C. § 3613. An "[a]ggrieved person" is one who--(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). A "'[d]iscriminatory housing practice' means an act that is unlawful under section 3604 [governing "the sale or rental of housing"], 3605 [governing "residential real estate-related transactions"], 3606 [governing "the provision of

brokerage services"], or 3617 of this title."[4]  42 U.S.C. § 3602(f).  "'To rent' includes to lease, to sublease, to let and otherwise to grant *for a consideration* the right to occupy premises not owned by the occupant."  42 U.S.C. § 3602(e) (emphasis added).

Plaintiff acknowledges that at all relevant times, U.S. VETS "fully subsidized" his rent "through its grant funding" and "executed" the leases for his apartment directly with the landlord or property manager.  Def.'s Mem. at 13-14 (citing Am. Compl. at 3; Compl. ¶ 3).  Because plaintiff is not a renter (actual or potential) as defined by the FHA, he cannot show that he is "a proper plaintiff."[5]  *Fla. Audubon Soc.*, 94 F.3d at 663.  In sum, plaintiff has no "legally protected interest" under the FHA and thus lacks Article III standing.[6]

---

[4]  Section 3617 proscribes "[i]nterference, coercion, or intimidation" in one's enjoyment of "any right granted or protected by section 3603, 3604, 3605, or 3606," all having to do with the sale or rental of housing.

[5]  Defendant has cited *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982), for the proposition that "the sole requirement for standing to sue" under the FHA "is the Article III minimum injury in fact."  Mem. at 17, n.11.  Because that case addresses "standing to sue under § 812 of the Fair Housing Act, 42 U.S.C. § 3612," governing enforcement actions by the United States, and "injuries allegedly caused by racial steering practices," *Havens Realty Corp.*, 455 U.S. at 372, the Court does not find it directly applicable to this action brought by a "private person[ ]" under § 3613.  In any event, that "Congress intended standing under the Fair Housing Act to extend to the full limits of Article III" answers the "prudential standing inquiry," *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990), but it does not relieve the Court of its obligation to consider "core Article III standing."  *Id.* (citing *Havens Realty Corp.*, 455 U.S. at 372).

[6]  Even if plaintiff has standing, his initial gender discrimination claim, *see* Compl. [Dkt. # 1], assuming that it survives the amended complaint presenting no such claim, would fail as a matter of law for two reasons.  First, plaintiff is not an actual or potential renter or buyer, and while the Supreme Court "has emphasized that the language of the [FHA] is 'broad and inclusive,' and must be given a 'generous construction,' . . . the statutory language is clear that . . . the discrimination [must have] occurr[ed] in connection with the 'sale or rental of a dwelling[.]'"  *Abdus-Sabur v. Hope Vill., Inc.*, 221 F. Supp. 3d 3, 14 (D.D.C. 2016) (quoting *Hunter ex rel. A. H. v. District of Columbia*, 64 F. Supp. 3d 158, 173 (D.D.C. 2014) (other citation omitted) (alteration in original)).  Second, plaintiff has not alleged an actual injury.  He takes issue with the manner in which he was relocated from one apartment to another and later to another apartment building, but he does not dispute that U.S. VETS has never deprived him of a rent-free apartment in the eight years that he has participated in its housing program.  *See* Def.'s Mot. at 1; Mem. at 17-20.  But for the

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss as to the FHA claim and declines to exercise supplemental jurisdiction over the D.C. statutory claims and any common law claims. In addition, the complaint against The Community Partnership is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). A separate order accompanies this Memorandum Opinion.

                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                

                                                                                            _____s/s_____
                                                                                COLLEEN KOLLAR-KOTELLY

DATE: December 17, 2019                              United States District Judge

---

jurisdictional barrier, then, plaintiff's FHA claim would not survive defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim.